IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| A & C DISCOUNT PHARMACY, L.L.C. | § | |
| d/b/a MEDCORE PHARMACY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:16-CV-0264-D |
| VS. | § | |
| | § | |
| CAREMARK, L.L.C., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

The instant motion to remand presents the question whether the removing defendants

have demonstrated by a preponderance of the evidence that the amount in controversy

exceeds the sum or value of $75,000, exclusive of interest and costs, and that there is

complete diversity of citizenship.  Concluding that defendants have met this burden, the court

denies the motion.

I

This is a removed action in which plaintiff A & C Discount Pharmacy LLC d/b/a

Medcore Pharmacy ("A&C") sues defendants CaremarkPCS, LLC and Caremark, LLC

(collectively, "Caremark") for injunctive and declaratory relief.  Caremark is a pharmacy

benefits manager that administers the pharmacy benefits of its health plan clients, by, among

other things, maintaining a network of retail pharmacies at which health plan members can

fill their prescriptions.  When a patient fills a prescription at a retail pharmacy in the

Caremark network, Caremark reimburses the pharmacy and then seeks repayment from its

health plan client.   A&C is a retail pharmacy in Caremark's pharmacy reimbursement network.   Caremark contends that A&C breached its provider agreement when it began submitting claims to Caremark for complex compound pharmaceuticals.   Caremark notified A&C of the alleged breaches by letters dated June and August 2015.   Because A&C continued to submit complex compound claims, Caremark sent A&C a written Notice of Termination in October 2015, informing A&C that, due to its failure to follow submission guidelines, it would be terminated from the Caremark network on a specific day and for a period of one year, but that it could re-enroll in the Caremark network after that time.

A&C filed suit in Texas state court on January 28, 2016, the day before it was to be terminated from the Caremark network, seeking a declaratory judgment that it did not breach its provider agreement with Caremark and a temporary restraining order ("TRO"), as well as temporary and permanent injunctive relief, to prevent Caremark from dropping A&C from the Caremark network.[1]   Caremark removed the case in February 2016 based on diversity jurisdiction under 28 U.S.C. § 1332.   A&C now moves to remand, contending that the court lacks subject matter jurisdiction because Caremark has failed to establish that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and that there is complete diversity of citizenship.   Caremark opposes the motion.

_____

[1]On that same day, A&C obtained an *ex parte* TRO in state court restraining Caremark from terminating A&C's participation in its network.   Upon removal, this court found that the TRO should not have been entered in the first place and permitted the TRO to expire, as scheduled, on February 25, 2016.   Thereafter, Caremark terminated A&C from its network. A&C's requests for preliminary and permanent injunctive relief remain pending.

II

As the removing party, Caremark "has the burden of overcoming an initial presumption against jurisdiction and establishing that removal is proper." *Carnes v. Data Return, L.L.C.*, 2005 WL 265167, at *1 (N.D. Tex. Feb. 1, 2005) (Fitzwater, J.) (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). "In general, defendants may remove a civil action if a federal court would have had original jurisdiction." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing 28 U.S.C. § 1441(a)). "Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which (a federal) statute has defined." *Victory Carriers, Inc. v. Law*, 404 U.S. 202, 212 (1971) (quoting *Healy v. Ratta*, 292 U.S. 263, 270 (1934)). "The federal removal statute, 28 U.S.C. § 1441, is subject to strict construction because a defendant's use of that statute deprives a state court of a case properly before it and thereby implicates important federalism concerns." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997) (citing *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995)). "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). The district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the parties are completely diverse. *See* 28 U.S.C. § 1332(a); *see also Uglunts v. Americare Servs., Inc.*, 2013 WL 3809681, at *1 (N.D. Tex. July 23, 2013) (Fitzwater, C.J.).

III

The court considers first whether Caremark has met its burden of establishing that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

A

If the plaintiff's state court petition demands monetary relief of a stated sum, that sum, if asserted in good faith, is deemed to be the amount in controversy. *Dart Cherokee Basin Operating Co. v. Owens*, ___ U.S. ___, 135 S.Ct. 547, 551 (2014). But when, as here, the plaintiff's state court petition does not state the amount in controversy, the defendant's notice of removal must make "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 553-54.[2] No evidence is required unless and until the plaintiff contests, or the court questions, the allegation. *See id.* at 551, 554.

If the plaintiff contests the allegation, then the defendant must prove, by a preponderance of the evidence, that the amount in controversy requirement has been satisfied. *Id.* at 554 (explaining that, if plaintiff contests defendant's allegation, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied"); *see also Allee Corp. v. Reynolds &*

---

[2]As Caremark points out, A&C's petition "seeks monetary relief of $100,000 or less and non-monetary relief." Pet. ¶ 2. This paragraph, however, "merely conforms to Texas Rule of Civil Procedure 47, which requires plaintiffs to select one of five prescribed claims for relief, and does not represent a request for a specific dollar amount of damages." *Oliver v. CitiMortgage, Inc.*, 2014 WL 285218, at *3 (N.D. Tex. Jan. 27, 2014) (Fish, J.) (citing Tex. R. Civ. P. 47). And because Rule 47 "requires plaintiffs to state their damage requests in the form of these prescribed, broad ranges, that provision effectively preclude plaintiffs from requesting specific damage amounts." *Id.* (citing Tex. R. Civ. P. 47).

*Reynolds Co.*, 2015 WL 1914663, at *3 (N.D. Tex. Apr. 28, 2015) (Fitzwater, J.). The defendant's burden "is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth summary judgment type evidence of facts in controversy that support a finding of the requisite amount." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (internal quotation marks omitted). If the defendant can produce evidence sufficient to show by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold, the plaintiff can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed the sum or value of $75,000, exclusive of interest and costs. *See De Aguilar*, 47 F.3d at 1411.

B

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *see also Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013) (per curiam); *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 640 (5th Cir. 2003). In its state court petition, A&C seeks injunctive relief to prevent Caremark from terminating A&C from the Caremark network and a declaratory judgment that Caremark's prospective termination of A&C from its network is unlawful under the Texas Insurance Code. A&C attached to its petition the termination letter from Caremark notifying A&C that its participation in Caremark's pharmacy network would be terminated for a period of one year, and that, after that time, A&C could be reinstated.

The parties do not dispute that the object of this litigation is A&C's participation in Caremark's pharmacy network for 12 months.[3]

C

Caremark made the necessary plausible allegation in its notice of removal that the amount in controversy exceeds the jurisdictional threshold.[4] Caremark maintains that A&C's state court petition reveals an amount in controversy in excess of $75,000, excluding interest and costs.   It asserts that "[A&C's] [p]etition is aimed at restricting [Caremark] from terminating [A&C's] participation in [its] provider network due to [A&C's] breach of contract."  Not. of Removal ¶ 3.  And Caremark points out that the petition "alleges that if [Caremark] [is] not enjoined from terminating [A&C's] participation in [Caremark's] provider network, 'such action will eliminate the source of approximately one-third or more of [A&C's] patients,' and [A&C's] business will be 'destroy[ed]' or 'exterminat[ed].'"  *Id.* at ¶ 12 (quoting Pet. at 4, 9) (citing Pet. at 2, 12).  Caremark further asserts that A&C seeks attorney's fees pursuant to the Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

---

[3]In its response, Caremark contends that the purpose of the injunctive and declaratory relief sought in this case is to stop Caremark from terminating A&C's participation in its pharmacy network for a minimum period of 12 months, and thus that the object of this litigation is "twelve months in the Caremark pharmacy network."  Ds. Resp. 2.  A&C does not respond to this assertion or even discuss the value of the object of this litigation.  It is therefore clear from A&C's petition and the parties' briefing that the object of this litigation is A&C's participation in the Caremark pharmacy network for a period of 12 months.

[4]A&C's first and second amended notices of removal include this allegation as well.

D

A&C challenges Caremark's allegations regarding the amount in controversy, asserting that Caremark cannot demonstrate that it is facially apparent that the amount in controversy exceeds the jurisdictional threshold, and that Caremark has failed to provide any competent proof establishing by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold.  Because A&C challenges Caremark's allegations, Caremark must prove by a preponderance of the evidence that the jurisdictional threshold is satisfied.

Caremark responds that A&C's petition shows that the value of this litigation exceeds $75,000.  Caremark also introduces the declaration of its Director of Pharmacy Performance, Mark A. Shelby ("Shelby"), to establish the value of the object of this litigation (i.e., A&C's participation in the Caremark pharmacy network for 12 months).  Shelby avers that he has supervisory responsibility and familiarity over the following acts related to A&C,  and he contends that, before A&C filed this lawsuit, Caremark sent A&C two warning letters that examined A&C's participation in Caremark's network for two prior months.  Shelby maintains that A&C submitted 517 claims in those two months, and "[t]he total amount of claims filed for the two months was $1,094,086."  Ds. Resp. Ex. 1 ¶ 9.  Caremark posits that, because A&C cannot rejoin Caremark's network for at least 12 months, the estimated value of the object of this litigation is more than $6 million in economic damages alone.

In its reply, A&C neither asserts that Shelby's allegations are incorrect nor does it provide any evidence showing the amount in controversy.  Rather, A&C relies on two

arguments. First, it posits that Caremark's notice of removal asserts only that it is facially apparent from the petition that the amount in controversy exceeds $75,000, and that Caremark's response discards all references to facial sufficiency and instead seeks to establish the amount in controversy through a declaration attached to Caremark's response. A&C appears to cite *Dart Cherokee Basin Operating* for the proposition that Caremark cannot withdraw its allegations supporting the amount in controversy and attempt to replace them with an entirely new set of allegations. The court disagrees.

Caremark has not abandoned its facially apparent argument. In its response, Caremark cites A&C's petition and asserts that "[A&C's] live pleading unequivocally states that this value exceeds the $75,000 threshold." Ds. Resp. 2. Caremark provides additional evidence (Shelby's declaration) to help establish that the amount in controversy exceeds the jurisdictional threshold. In *Dart Cherokee Basin Operating* the Supreme Court did not hold that, once the amount in controversy is challenged, the removing party cannot continue to assert that it is facially apparent from the petition that the amount in controversy requirement is satisfied and also introduce evidence establishing the amount in controversy. Moreover, the court need not decide whether a sufficient amount in controversy is apparent on the face of the petition, because it concludes that Caremark has adduced sufficient supplemental evidence to satisfy its burden of proof. *See Franklin v. Codman & Shurtleff Inc.*, 2013 WL 1809533, at *3 n.4 (N.D. Tex. Apr. 30, 2013) (Fitzwater, C.J.) (concluding that "[t]he court need not decide whether a sufficient amount in controversy is apparent on the face of the complaint, because the court concludes that defendants have adduced sufficient supplemental

evidence to satisfy their burden of proof").

Second, A&C contends that Shelby's declaration is insufficient evidence to establish the amount in controversy. It maintains that Shelby's declaration was originally attached in support of a completely different response brief, addressing a different issue. And A&C asserts that Shelby's declaration fails to address whether the two isolated months are representative of the business pattern between A&C and Caremark in general, what the claimed millions of dollars represent, such as the cost of goods sold or the profit made, and whether Shelby's valuation is from the perspective of Caremark or A&C.

A&C's second objection is also unpersuasive. It certainly is not fatal that Shelby's declaration was used to support another response brief in this case. It is also clear that Shelby's valuation is viewed from A&C's perspective. When a patient fills a prescription at a retail pharmacy in Caremark's retail pharmacy network, such as A&C, Caremark reimburses the pharmacy and then seeks repayment from its health plan client. Thus when Shelby avers that "the total amount of claims filed for the two months was $1,094,086," it is apparent that he means that A&C sought reimbursement from Caremark for this amount. Further, while it might have been preferable for Caremark to provide evidence explaining whether the total amount of claims constitutes the cost of goods sold or the profits made, and showing that the total amount of claims filed for the two months examined are representative of the parties' relationship generally, these omission are not fatal.

The Fifth Circuit follows a common sense approach to determine whether the defendant has met its burden with respect to the amount in controversy. *See, e.g., Robertson*

*v. Exxon Mobil Corp.*, 814 F.3d 236, 240-41 (5th Cir. 2015) (concluding that defendants offered evidence that satisfied their burden of establishing that at least one plaintiff's claim exceeded $75,000, because defendants' evidence showed each plaintiff's specific harms, and "common sense dictat[ed]" that some of the harms—such as one plaintiff's alleged emphysema and the wrongful death of her husband and another plaintiff's alleged prostate cancer—placed more than $75,000 at stake); *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995) ("A court, in applying only common sense, would find that if the plaintiffs were successful in their punitive damages claim, they would collect more than $50,000."); *Griffin v. HSBC Bank USA*, 2010 WL 4781297, at *3 (N.D. Tex. Nov. 24, 2010) (Lindsay, J.) (explaining that, because plaintiff sought an order rescinding foreclosure and restoring title of the property to her, the value of the property was to be used in determining the amount in controversy, and concluding that "a common-sense analysis and approach establish[ed] that the sum of [value of the property, additional damages, and attorney's fees] [was] more likely than not to exceed the jurisdictional threshold").

Even assuming *arguendo* that Shelby's valuation reflects A&C's revenues rather than its profits, common sense dictates that A&C would more likely than not realize at least a 7% profit ($76,586.02) on the $1,094,086, which would itself satisfy the amount in controversy. And even if the total amount of claims filed for the two months examined by Caremark is higher than the average monthly total (which A&C does not allege), common sense dictates that the value of the object of this litigation—A&C's participation in Caremark's pharmacy network for 12 months—is valued at more than $75,000, exclusive of interest and costs. This

- 10 -

is especially true given that A&C's petition alleges that A&C's termination will immediately result in a loss of one-third or more of its customers, and seeks attorney's fees. *See White v. FCI USA, Inc.*, 319 F.3d 672, 675-76 (5th Cir. 2003) (concluding that attorney's fees may be included in the amount in controversy); *see also Alsobrook v. GMAC Mortg., LLC*, 2012 WL 1643220, at *2 (N.D. Tex. Apr. 13, 2012) (Stickney, J.), *rec. adopted*, 2012 WL 1655765 (N.D. Tex. May 9, 2012) (Lynn, J.), *aff'd*, 541 Fed. Appx. 340 (5th Cir. 2013). Thus the court finds that Caremark has met its burden of establishing by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional threshold. And because A&C has presented no evidence that it will not be able to recover more than the jurisdictional amount, *see De Aguilar*, 47 F.3d at 1411, the court denies A&C's motion to remand on this ground.

## IV

The court considers next whether Caremark has met its burden of establishing that the parties are completely diverse.

## A

It is settled that diversity jurisdiction requires complete diversity of citizenship between all plaintiffs and all defendants. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978); *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). "This means that no plaintiff can be a citizen of the same state as even one defendant." *Davis v. Am. Home Prods.*, 2005 WL 910601, at *2 (N.D. Tex. Apr. 20, 2005) (Fitzwater, J.). "'The burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction.'"

- 11 -

*Guerrero v. State Farm Mut. Auto. Ins. Co.*, 181 F.3d 97, 1999 WL 346977, at *2 (5th Cir.

May 20, 1999) (per curiam) (unpublished table decision) (quoting *Ray v. Bird & Son & Asset

Realization Co.*, 519 F.2d 1081, 1082 (5th Cir. 1975)).   Thus when a defendant removes

based on diversity of citizenship, the notice of removal must allege diversity of citizenship

by distinctly and affirmatively alleging the citizenship of each party.   *See, e.g., Getty Oil

Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) ("[T]he basis upon which

jurisdiction depends must be alleged affirmatively and distinctly and cannot be established

argumentatively or by mere inference." (citing *Illinois Cent. Gulf R. Co. v. Pargas, Inc.*, 706

F.2d 633, 636 & n.2 (5th Cir. 1983)); *B., Inc. v. Miller Brewing*, 663 F.2d 545, 549 (5th Cir.

1981) ("[W]here an out-of-state defendant removes an action from state to federal court, the

burden is upon the removing party to plead a basis for federal jurisdiction." (citing cases)).

Moreover, "'if jurisdiction is properly challenged, [the party invoking federal

jurisdiction] also bears the burden of proof.'"   *Guerrero*, 1999 WL 346977, at *2 (quoting

*Ray*, 519 F.2d at 1082).   "When jurisdiction has been challenged, a mere allegation of

citizenship is insufficient to prove jurisdiction."   *Id.* (citing *Welsh v. Am. Sur. Co.*, 186 F.2d

16, 17 (5th Cir. 1951)).   "Moreover, when federal jurisdiction has been challenged and no

evidence in support of jurisdiction is adduced by the party seeking to invoke it, a federal

court may not assert jurisdiction."   *Id.* (citing cases).

B

A&C contests the sufficiency of Caremark's allegations of citizenship in its notice of

removal, contending that Caremark makes only conclusory statements as to A&C's

citizenship. The court disagrees. For diversity jurisdiction purposes, a natural person is considered a citizen of the state where that person is domiciled—that is, where the person has a fixed residence with the intent to remain there indefinitely. *See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 797 (5th Cir. 2007); *Freeman v. Nw. Acceptance Corp.*, 754 F.2d 553, 555-56 (5th Cir. 1985). The citizenship of a limited liability company is determined by the citizenship of all of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). A corporation is considered to be a citizen both of its state of incorporation and of its principal place of business. *See Ill. Cent. Gulf R.R. Co.*, 706 F.2d at 637.

In Caremark's second notice of removal, it distinctly and affirmatively alleges the citizenship of each party. It alleges that A&C is a limited liability company and a citizen of Nevada because its sole member, Bekim Veseli ("Veseli"), is a citizen of Nevada. Caremark also alleges that CaremarkPCS, LLC and Caremark, LLC are citizens of Rhode Island because they are both limited liability companies with one member, CVS Pharmacy Inc., a corporation organized under the laws of Rhode Island with its principal place of business in Rhode Island. *See Huntahome Realty v. Jones*, 2014 WL 1494028, *2 (N.D. Tex. Apr. 15, 2014) (Lynn, J.) ("Because the notice of removal 'distinctly and affirmatively' alleges the parties' citizenship, Defendant has met his burden to show diversity of citizenship.").

- 13 -

C

A&C contends next that Caremark has provided no evidence establishing that Veseli is the sole member of A&C.[5]   A&C does not present any evidence, however, contesting that Veseli is A&C's sole member.   "When there has been no evidence presented by the plaintiff contesting the defendant's allegations in its notice of removal and the defendant included a 'short and plain statement of the facts' in its notice, the defendant has met its burden." *Kilduff v. First Health Benefits Adm'rs Corp.*, 2006 WL 1932348, at \*5 (N.D. Tex. July 10, 2006) (Fish, C.J.) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97-98 (1921) ("[I]f the plaintiff does not take issue with what is stated in the [notice of removal], he must be taken as assenting to its truth, and the [removing] defendant need not produce any proof to sustain it.")); *see also Sure Way Homes, Inc. v. Bank of Am., N.A.*, 2013 WL 6409981, at \*2 (E.D. Mich. Dec. 9, 2013).

D

Finally, A&C maintains that Caremark has failed to provide sufficient evidence establishing that Veseli is a citizen of Nevada.   Unlike its challenge to whether Veseli is the sole member of A&C, however, A&C presents evidence contesting Caremark's allegation

---

[5]A&C does not appear to challenge whether Veseli is a member of A&C.   Although A&C maintains that the Texas Secretary of State's website "shows that Veseli is a manager of the LLC," P. Mot. 8, it never asserts that Veseli is not a member of A&C or that Caremark has failed to present evidence establishing that Veseli is a member of A&C.   Rather, A&C avers only that "[Caremark] simply state[s] that one 'Bekim Veseli' is the sole member of [A&C]," and that "[t]here is no evidence to support the claim[] that [Veseli] is the sole member." *Id.* at 7-8.   Thus it appears that A&C challenges only whether Veseli is the *sole* member, not whether Veseli is *a* member, of A&C.

- 14 -

of Veseli's citizenship.  A&C posits that the Texas Secretary of State's website, which Caremark cites in its notice of removal, lists a Dallas address for Veseli.

Caremark responds that A&C does not deny that Veseli is a citizen of Nevada or that there is complete diversity.  Caremark also provides a record from the Clark County, Nevada real property appraisal records showing that Veseli owns a single family residence in Nevada that was purchased in 2011.  And Caremark points to evidence showing that the mailing address listed for Veseli on the Texas Secretary of State's website is the address for A&C's Texas pharmacy, not a residence, and thus cannot establish citizenship.  Caremark also maintains that, even if Veseli was a citizen of Texas, there would still be complete diversity because defendants are citizens of Rhode Island.

"The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction." *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996) (citing *Ray*, 519 F.2d 1081).  In ascertaining a party's domicile for diversity jurisdiction purposes, a court addresses a variety of factors, none of which is dispositive, including where the party "exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id.* at 251.  In making a determination and examining relevant factors, the court is not limited to the pleadings and may examine any evidence in the record. *Id.* at 249.

Before the court is evidence of Veseli's residence in Nevada.  "Evidence of a person's place of residence is prima facie proof of his domicile." *Fiduciary Network, LLC v. Buehler*,

- 15 -

2015 WL 2165953, at *2 (N.D. Tex. May 8, 2015) (Lynn, J.) (citing *Hollinger v. Home State*

*Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011)).  A&C has provided no rebuttal evidence.

The court therefore finds that Caremark has met its burden of establishing complete diversity

of citizenship.  Accordingly, the court denies A&C's motion to remand on this ground.

\*   \*   \*

For the reasons explained, A&C's motion to remand is denied.

**SO ORDERED**.

June 3, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 16 -