IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

A & C DISCOUNT PHARMACY, L.L.C.      §
d/b/a MEDCORE PHARMACY,              §
                                     §
                    Plaintiff,       §
                                     §   Civil Action No. 3:16-CV-0264-D
VS.                                  §
                                     §
CAREMARK, L.L.C., et al.,            §
                                     §
                    Defendants.      §

MEMORANDUM OPINION
AND ORDER

        The instant motion to compel arbitration presents the question whether the court or

the arbitrator should decide whether plaintiff's request for preliminary injunctive relief is

arbitrable.  Concluding that the arbitrator, not the court, should decide this issue, the court

grants the motion to compel, stays this case, and directs that it be administratively closed for

statistical purposes.

I

        This is a removed action in which plaintiff A & C Discount Pharmacy LLC d/b/a

Medcore Pharmacy ("A&C") sues defendants CaremarkPCS, LLC and Caremark, LLC

(collectively, "Caremark") for injunctive relief and declaratory relief.  Caremark, a pharmacy

benefits manager that administers the pharmacy benefits of its health plan clients, maintains

networks of retail pharmacies at which health plan members can fill their prescriptions.

When a patient fills a prescription at a retail pharmacy in the Caremark network, Caremark

reimburses the pharmacy and then seeks repayment from its health plan client.  A&C is a

retail pharmacy that is in Caremark's network.  Among other things, A&C dispenses to its patients compounded medications, which are drugs that are prepared from individual ingredients by the dispensing pharmacy.  Compounded medications are unlike most prescription medications that come in the form of a tablet, capsule, or other delivery mechanism that is finalized by the drug manufacturer and approved by the U.S. Food and Drug Administration (the "FDA").  A&C, like many compounding pharmacies, charges prices for its compounded medications that greatly exceed those for FDA-approved prescription medications.

A&C's participation in Caremark's network is governed by a written contract between A&C and Caremark.  In January 2015 A&C entered into a Provider Agreement with Caremark.  The Provider Agreement expressly incorporates the Caremark Provider Manual, which is issued and routinely updated by Caremark through an agreed-upon amendment process.  The parties agree that the 2016 Caremark Provider Manual ("Provider Manual") governs their contractual relationship for purposes of this case.  The parties' relationship is also governed by an Addendum to the Caremark Provider Agreement ("Addendum") that A&C signed in March 2015.

In June 2015 A&C began submitting claims for complex compound pharmaceuticals to Caremark, which Caremark contends is a breach of the Addendum.  The Addendum provides that "Provider agrees, unless otherwise expressly authorized by Caremark in writing, that Provider is not permitted under the Provider Agreement to dispense complex compounds and shall not submit claims for complex compounds," and it further provides:

- 2 -

> Provider agrees that dispensing complex compounds are outside the scope of Provider's permitted Pharmacy Services and submission of claims to Caremark for complex compounds is therefore a breach of the Provider Agreement, subject to all available remedies Caremark may have under the Provider Agreement (which includes the Provider Manual) including but not limited to recoupment of the claims and termination of the Provider Agreement.

D. App. 10.  Caremark notified A&C of this breach by letters dated June 9 and August 17, 2015.  It instructed A&C to immediately cease and desist submitting complex compound claims, acknowledge in writing that it would abide by the restriction against complex compound claims, and reverse the claims identified in the letters.  A&C continued, however, to submit complex compound claims after these notifications.

On October 7, 2015 Caremark sent A&C a written Notice of Termination, informing A&C that, due to its failure to follow submission guidelines, it would be terminated from the Caremark network on January 5, 2016.  At A&C's request, Caremark later agreed not to terminate A&C from its network until January 29, 2016.

One day before the extended termination date, A&C filed this suit in Texas state court, seeking a temporary restraining order ("TRO") and temporary and permanent injunctive relief.  The state court granted an *ex parte* TRO that restrained Caremark from terminating A&C's participation in its network.[1]  The state court scheduled a temporary injunction hearing, but before the hearing was held, Caremark removed the case to this court.  Judge

---

[1]Caremark contends that, despite its request, it was not given notice of the TRO hearing, and that the state court that issued the TRO was not advised of the parties' contractual agreement to arbitrate.

Godbey, to whom the case was initially assigned, extended the TRO for 14 days.  After the case was reassigned to the undersigned's docket, A&C filed a first amended complaint, application for TRO, and application for preliminary and permanent injunctive relief.  The court, finding that the state court TRO should not have been entered in the first place, permitted the TRO to expire, as scheduled, on February 25, 2016, and it denied as moot Caremark's motion to dissolve the TRO.  A&C's requests for preliminary and permanent injunctive relief remain pending.

Caremark now moves to compel arbitration, contending that the Provider Manual's arbitration clause ("Arbitration Agreement") requires that all disputes between the parties be arbitrated, and that preliminary injunctive relief can only be sought in arbitration.[2]  A&C opposes the motion.  It maintains that, although the parties' dispute is arbitrable, the American Arbitration Association Commercial Arbitration Rules and Mediation Procedures

---

[2]The Arbitration Agreement states, in pertinent part:

> Any and all disputes between Provider and Caremark . . . , including but not limited to, disputes in connection with, arising out of, or relating in any way to, the Provider Agreement or to Provider's participation in one or more Caremark networks or exclusion from any Caremark networks, will be exclusively settled by arbitration.  This arbitration provision applies to any dispute arising from events that occurred before, on or after the effective date of this Provider Manual.  Unless otherwise agreed to in writing by the parties, the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to the then applicable AAA Commercial Arbitration Rules and Mediation Procedures (available from the AAA)[.]

D. App. 14 (parentheses in original).

- 4 -

("AAA Rules"), which are incorporated into the Arbitration Agreement, permit it to seek preliminary injunctive relief in court.

II

Section 2 of the Federal Arbitration Act ("FAA") provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3-4) (emphasis in original).

When considering a motion to compel arbitration, the court engages in a two-step process. First, the court determines "whether the parties agreed to arbitrate the dispute." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (per curiam) (citation omitted). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (citations omitted). Second, the court decides "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). "If there is a valid agreement to arbitrate, and there are no legal constraints that foreclose arbitration, the court must order the parties to arbitrate their dispute." *Celaya v. Am. Pinnacle Mgmt. Servs., LLC*, 2013 WL 4603165, at *2 (N.D. Tex. Aug. 29, 2013)

(Fitzwater, C.J.).

### III

Application of the two-step process in this case is straightforward and undisputed. A&C and Caremark agree that the Provider Agreement is a valid contract between them, that the Provider Agreement expressly incorporates the Provider Manual, that the Provider Manual contains the Arbitration Agreement, and that the Arbitration Agreement is enforceable. The parties also agree that their dispute falls within the scope of the Arbitration Agreement. Accordingly, the court holds that the Arbitration Agreement constitutes an enforceable agreement to arbitrate and that the parties' dispute falls within the scope of the Arbitration Agreement.

Because the parties do not raise, and the court is unaware of, any legal constraints external to the Arbitration Agreement, the court need not address whether any such constraints foreclose arbitration of this dispute.

### IV

The court now turns to A&C's application for preliminary injunctive relief. The sole issue is who—as between the court and the arbitrator—should decide A&C's request for preliminary injunctive relief when the court has determined that all of A&C's claims must be sent to arbitration.

### A

The Arbitration Agreement provides, in pertinent part, that "[t]he above notwithstanding, nothing in this provision shall prevent either party from utilizing the AAA's

- 6 -

procedures for emergency relief to seek preliminary injunctive relief to halt or prevent a breach of this Provider Agreement." D. App. 15. The parties agree that the AAA Rules govern A&C's request for preliminary injunctive relief, but they disagree about which specific AAA Rule governs, as well as about the interpretation of the applicable AAA Rules. A&C maintains that Rule 37(c),[3] which addresses interim measures, and Rule 38(h),[4] which addresses emergency measures of protection, permit it to submit a request for injunctive relief to a court. A&C further maintains that the majority of federal circuit courts have held that a district court can issue injunctive relief to preserve the status quo pending arbitration, and that the Fifth Circuit, in *Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011), held that a district court can issue injunctive relief to protect the status quo pending resolution of a motion to compel arbitration.

Caremark maintains that the Arbitration Agreement, by stating that the parties may

---

[3]Rule 37(c) provides: "A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate."

[4]Rule 38(h) provides:

> A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this rule, the agreement to arbitrate or a waiver of the right to arbitrate. If the AAA is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the AAA shall proceed as provided in this rule and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

"utiliz[e] the AAA's procedures for emergency relief to seek preliminary injunctive relief," clearly refers to Rule 38 and its procedures for obtaining "emergency relief." And it posits that A&C's situation is directly addressed by Rule 38(b).[5] Caremark also asserts that, under Rule 38(a),[6] Rule 38 is mandatory because the Arbitration Agreement does not contain any provision that would invalidate Rule 38, and that A&C has not identified any other agreement that would in any way alter Rule 38. Caremark also posits that the AAA Rules relied on by A&C do not authorize a party to seek preliminary injunctive relief from a court and do not provide "procedures" for doing so. Rather, Caremark argues that Rules 37(c) and 38(h) preserve the jurisdiction of the arbitrator by stating that no request to a judicial tribunal will be deemed "a waiver of the right to arbitrate."

Alternatively, Caremark maintains that the AAA Rules explicitly reserve to the arbitrator, not the court, the power to decide the correct interpretation of the AAA Rules and

---

[5]Rule 38(b) provides:

> A party in need of emergency relief prior to the constitution of the panel shall notify the AAA and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by facsimile or e-mail or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.

[6]Rule 38(a) provides: "Unless the parties agree otherwise, the provisions of this rule shall apply to arbitrations conducted under arbitration clauses or agreements entered on or after October 1, 2013."

the appropriate jurisdiction of the arbitrator.  Caremark relies on Rule 7(a), which provides: "The arbitrator shall have the power to rule on his or her own jurisdiction," and Rule 8, which provides: "The arbitrator shall interpret and apply these rules insofar as they relate to the arbitrator's powers and duties[.]"

B

The court declines to rule on A&C's application for preliminary injunctive relief.  The case relied on by A&C, *Janvey*, 647 F.3d 585, is inapposite.  In *Janvey* the Fifth Circuit held that a district court can rule on a motion for preliminary injunction to preserve the status quo while a motion to compel arbitration is pending.  *Id.* at 595.  It did not address the present situation—where the court has already decided that the case is arbitrable.  The *Janvey* panel acknowledged the circuit split concerning whether "'the [FAA] require[s] that a federal court immediately divest itself of any power to act to maintain the status quo *once it decides that the case before it is arbitrable*.'"  *Id.* at 594 (emphasis in original) (quoting *RGI, Inc. v. Tucker & Assocs., Inc.*, 858 F.2d 227, 228-29 (5th Cir. 1988) (acknowledging, but not entering, the circuit split)).[7]  But *Janvey* did not enter the circuit split.  *See id.* at 595 n.7

---

[7]The court in *Amegy Bank National Ass'n v. Monarch Flight II, LLC*, 870 F.Supp.2d 441 (S.D. Tex. 2012), explained the circuit split:

> Most circuits that have addressed the issue have held that a district court may enter injunctive relief to preserve the status quo pending arbitration.  *See, e.g., Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1052 (2d Cir. 1990); *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 812 (3d Cir. 1989); *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

("[W]e reserve for another day the issues of whether a district court divests itself of the discretion to maintain the status quo once it decides the case before it is arbitrable and, if not, what the limits of that discretion may be.").

The court in *Grasso Enterprises, LLC v. CVS Health Corp.*, 143 F.Supp.3d 530 (W.D. Tex. 2015), addressed a situation similar to the present case. The *Grasso* court first determined that the parties had agreed to arbitrate their dispute. In doing so, it held that the arbitration clause in the Provider Manual, which was incorporated into the Provider Agreement, constituted an agreement to arbitrate. *Id.* at 537-40. And it concluded that the parties' dispute fell within the scope of that agreement because the parties, by incorporating the AAA Rules into the arbitration clause, agreed to arbitrate arbitrability. *Id.* at 540 (citing *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir.

---

> *Bradley*, 756 F.2d 1048, 1051-54 (4th Cir. 1985). These courts have explained that "[a]rbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo before the arbitrators are able to render a decision in the dispute." *Blumenthal*, 910 F.2d at 1053 (citations omitted). Only the Eighth Circuit reached a different result. It has held that because "the judicial inquiry requisite to determine the propriety of injunctive relief necessarily would inject the court into the merits of issues more appropriately left to the arbitrator," a "district court errs in granting injunctive relief" in the absence of "qualifying contractual language" providing for or contemplating the injunctive relief sought. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286, 1292 (8th Cir. 1984).

*Id.* at 451-52.

2012)).  The *Grasso* court also concluded that no legal constraints rendered the dispute nonarbitrable.  *Id.* at 542.

The *Grasso* court then turned to the plaintiff's motion for preliminary injunction, and it considered whether the following clause in the arbitration agreement allowed the parties to seek injunctive relief outside of arbitration: "The above notwithstanding, nothing in this provision shall prevent either party from seeking preliminary injunctive relief to halt or prevent a breach of this Provider Agreement in any state or federal court of law."  *Id* at 543. As an initial matter, the court explained that "there is no case that would require this Court to issue a ruling on the preliminary injunction motion even though it has ordered the case proceed in arbitration."  *Id.*  The *Grasso* court declined to rule on the preliminary injunction motion, reasoning that "'the judicial inquiry requisite to determine the propriety of injunctive relief necessarily would inject the court into the merits of issues more appropriately left to the arbitrator.'"  *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hovey*, 726 F.2d 1286, 1292 (8th Cir. 1984)).  It also reasoned that, because the parties, by incorporating the AAA Rules into their arbitration agreement, had agreed to arbitrate arbitrability, "an arbitrator, not this Court, [must] decide whether the issue that underlies the claim for preliminary injunctive relief is within the scope of the arbitration agreement or is covered by the exception."  *Id.* (citing *Crawford*, 748 F.3d at 262; *Petrofac*, 687 F.3d at 675).

The court in *RX Pros, Inc. v. CVS Health Corp.*, 2016 WL 316867 (W.D. La. Jan. 26, 2016), also addressed a similar issue.  In *RX Pros* the parties agreed that the arbitration agreement governed their underlying dispute, and the only issues before the court were

- 11 -

whether the state court had authority to enter the TRO in the first place, and if not, whether the court had authority to dissolve the TRO before compelling arbitration. *Id.* at *2. And the court addressed a provision in an arbitration clause identical to the one at issue in the present case: "The above notwithstanding, nothing in this provision shall prevent either party from utilizing the AAA's procedures for emergency relief to seek preliminary injunctive relief to halt or prevent a breach of this Provider Agreement." *Id.* at *2 n.2. The *RX Pros* court held that the state court improperly granted the TRO, and it dissolved the state court TRO. *Id.* at *3-4. In doing so, the court explained:

> Under the clear language of the 2016 Provider Manual, this question was for the arbitrator to decide. *See Crawford*, 748 F.3d at 262-63. In *Crawford*, the court held that express incorporation of the rules of the arbitration service constitutes clear and unmistakable evidence that the parties have agreed to arbitrate arbitrability. *Id.* Then, the court noted that the arbitration clause in the 2014 Provider Manual incorporated the rules of the AAA. According to the Fifth Circuit, incorporation of those rules constituted "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability. *Id.*
>
> The 2016 Provider Manual contains the same express incorporation of the rules of the arbitration service that the Fifth Circuit held constitutes "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability. Therefore, when faced with the Petition for a TRO, the state court should have referred the matter to arbitration. *See Grasso*, 2015 WL 6550548 at *12 (construing 2014 Provider Manual and finding that arbitrator should determine whether exception allowing party to file for injunctive relief in federal or state court applied).

*Id.* at *3.

In the present case, the court need not enter the circuit split and decide whether it can

consider a request for preliminary injunctive relief after it has decided that the case is arbitrable.  This is so because both parties agree that the AAA Rules are incorporated into the Arbitration Agreement,[8] and the express incorporation of the AAA Rules into the Arbitration Agreement "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Crawford*, 748 F.3d at 262-63 (citing *Petrofac*, 687 F.3d at 675). As in *Grasso* and *RX Pros*, because the parties agreed to arbitrate arbitrability, the arbitrator, not the court, should rule on who has the primary power to decide whether A&C's request for preliminary injunctive relief is arbitrable.  *Cf. Petrofac*, 687 F.3d at 675 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)) ("'Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question who has the primary power to decide arbitrability turns upon what the parties agreed about *that* matter.'") (internal quotations omitted) (emphasis in original).

Accordingly, the court declines to rule on A&C's request for preliminary injunctive relief.

---

[8]The Arbitration Agreement states, in pertinent part: "Unless otherwise agreed to in writing by the parties, the arbitration shall be administered by the American Arbitration Association ('AAA') pursuant to the then applicable AAA Commercial Arbitration Rules and Mediation Procedures (available from the AAA)."  D. App. 14 (parentheses in original).

\* \* \*

For the reasons explained, Caremark's motion to compel arbitration is granted. The court stays this case and directs that it be administratively closed for statistical purposes.

**SO ORDERED**.

June 27, 2016.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE